**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

ULA TOE,                                          *

         Plaintiff,                         *

         v.                                    *          Civil Action No. AW-05-2238

UNITED PARCEL SERVICE, INC.,          *

         Defendant.                       *

                        * * * * *

## MEMORANDUM OPINION

Plaintiff Ula Toe ("Toe" or "Plaintiff") brings this suit against Defendant United States Parcel Service, Inc. ("UPS" or "Defendant"), alleging that UPS discriminated against her because of her sex. Currently pending before the Court is Defendant's Motion for Summary Judgment [23]. The Court has reviewed the entire record, as well as the Pleadings with respect to the instant motions. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated more fully below, the Court will GRANT Defendant's Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts are taken in the light most favorable to the non-movant and are gleaned from Plaintiff's Opposition to Defendant's Motion. Ula Toe was a part-time employee who was employed by UPS at its Burtonsville, MD hub facility as an unloader. Plaintiff was initially employed by UPS in 1998. While employed by UPS in 1998, an incident occurred with a sorter known to Plaintiff as "Mecca." Mecca said "Bitch, slow down." Plaintiff yelled back at Mecca and Mecca responded by jumping on the conveyor belt, grabbing his genital area, and screaming to Plaintiff to "Suck my dick, bitch." Plaintiff complained to her supervisors about the incident, whose

1

only response was to remove Mecca from Plaintiff's unload area and have Plaintiff escorted to her car by one of her supervisors, Bryan Johnson.  Toe worked at UPS for three months and relocated to Boston.

Toe moved back to Maryland and in March 2002, and was rehired by UPS as a part-time unloader at the Burtonsville, Maryland hub.  During this course of employment with UPS, Plaintiff's immediate supervisor, Ezekiel (Zeke) Mercer, engaged her in a sexual relationship beginning in September 2002, and the two began residing with each other until December 2002.  Plaintiff became pregnant as a result of her relationship with Mercer, had an abortion in April, 2003, and her relationship with Mercer ended thereafter.  Additionally, Plaintiff was subjected to sexually explicit, aggressive and suggestive comments from numerous UPS employees on a daily basis, including but not limited to "suck my penis," "you probably suck dick good," and "let's fuck."[1]  On another occasion, another UPS unloader invited Plaintiff to take a bath with him.  UPS' policy with regard to sexual and/or other harassing behavior was that employees should report such behavior to a supervisor or Human Resources.  Pursuant to the policy, Plaintiff made complaints of such conduct to her immediate supervisor, Ezekiel Mercer.  An audit supervisor named Hugh Clark had a crush on Plaintiff and made advances toward Plaintiff which she complained about to her supervisor, Ezekiel Mercer.  Mercer, Plaintiff's supervisor and the person charged with handling and responding to such complaints, admitted that Plaintiff complained to him of such conduct and testified that Plaintiff's complaints to him went in one ear and out the other.  UPS did not have a policy regarding supervisors having personal relationships with employees under their supervision, but they did

---

[1] The Court includes these expletives in its Opinion in order to highlight the harshness and severity of the language Plaintiff was allegedly subjected to at work.

prefer that such relationships not occur.

On January 28, 2003, a group of revenue auditors under the supervision of Hugh Clarke, submitted a formal complaint against Plaintiff alleging she was verbally and physically abusive. The auditors acknowledge in the complaint that Toe had made an unspecified complaint against them for sexual harassment on January 16, 2003. The auditors complaints were directed to Mercer to be investigated and handled. On May 8, 2003, Plaintiff had a physical altercation with a revenue auditor named Babatunde Oshakoya. Plaintiff's supervisor, Ezekiel Mercer, investigated the incident and determined it to be a "he said, she said" incident, even though there were witnesses to the altercation. As a result of the altercation, Plaintiff was required to sign a copy of the UPS Anti-Harassment and Professional Conduct Policy. On May 30, 2003, Plaintiff Toe resigned from UPS as a result of the treatment and work conditions there.

Toe initially pursued her claims administratively, by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 *et seq.* ("Title VII"). Toe subsequently abandoned her statutory employment discrimination claims. On May 27, 2005, Plaintiff filed this action in the Circuit Court for Prince George's County, Maryland alleging wrongful constructive discharge, negligence, and *respondeat superior*. Defendant successfully removed the action to this Court based upon diversity of jurisdiction. *See* 28 U.S.C. § 1332.

## STANDARD OF REVIEW

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty.*

*Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.*, 2 F. Supp. 2d 751, 756 (D. Md. 1998).  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotations omitted).  The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence."  *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted).  While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.  *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

## ANALYSIS

There is no question here that Plaintiff's allegations are based on workplace sexual harassment.  Plaintiff alleges that she was sexually harassed by UPS employees, and she initially pursued these claims under the anti employment discrimination statutes of Title VII.  However, Plaintiff has now chosen to pursue these claims in this Court under the common law theories of wrongful constructive discharge and negligence in hiring, training and retention.[2]  Unfortunately for Plaintiff, these claims were defective at their inception.  Generally, "where a statute provides a special form of remedy, the plaintiff must use that form rather than any other."  *Solely v. Md.*

---

[2] Counts III and IV of Plaintiff's Complaint alleges "Punitive Damages" and "*Respondeat Superior*," respectively.  Because these Counts are not cognizable legal claims, the Court will disregard Counts III and IV.  Instead, the Court will note Plaintiff's request for punitive damages and consider Plaintiff's *respondeat superior* "claim" as a theory of liability rather than as an independent claim.

*Comm'n on Human Relations*, 356 A.2d 254, 257 (Md. 1976). Since federal and state employment discrimination statutes provide the exclusive remedy for workplace sexual harassment and preempt any common law claims, Defendant is entitled to summary judgment as a matter of law.[3]

A.  Wrongful Discharge Claim

Maryland is an employment-at-will state. Generally, an at-will employee can be fired at any time and for any reason, or no reason at all. Maryland recognizes an exception to this general rule when an employee is discharged for a reason that "contravene[s] some clear mandate of public policy." *Adler v. Am. Standard Corp.*, 432 A.2d 464, 473 (Md. 1981). However, no common law wrongful discharge in violation of public policy claim lies where the underlying public policy is embodied in a statute which provides its own remedies. *See Porterfield v. Mascari II, Inc.*, 823 A.2d 590, 604 (Md. 2003); *Makovi v. Sherwin-Williams Co.*, 561 A.2d 179 (Md. 1989). Relevant to the case *sub judice*, this Court has held that because federal and state employment discrimination statutes provided a comprehensive remedy for sexual harassment, the plaintiff could not proceed with a common law action for constructive discharge. *See Glezos v. Amalfi Ristorante Italiano, Inc.*, 651 F. Supp. 1271, 1276 (D. Md. 1987); *see also Hart v. Harbor Court Assocs.*, 46 F. Supp. 2d 441, 444 (D. Md. 1999) (explaining that "if Title VII and Md. Code Ann. Art. 49B provide a remedy for a terminated employee, the employee cannot sue for wrongful discharge"). The constructive

---

[3] It is clear from the record that Plaintiff initially pursued this action before the EEOC. *See* Toe Dep. 330:16-21, March 13, 2006. Plaintiff filed a Charge of Discrimination on May 16, 2003. *See* Def.'s Mem. in Support of Mot. for Summ. J. Ex. 14. On September 14, 2004, the EEOC dismissed Plaintiff's charges and issued her a Notice of Right to Sue. *See* Def.'s Mem. in Support of Mot. for Summ. J. Ex. 15. The Notice of Right to Sue gave Plaintiff ninety (90) days to file a suit under Title VII in state or federal court. *Id.* Plaintiff filed this suit in state court on May 27, 2005, well after the 90-day deadline. Plaintiff has provided no explanation for her apparent abandonment of her Title VII claims.

discharge cause of action has limited application in Maryland, and is only available for violations of public policies not already covered by statute.  Because Plaintiff's sexual harassment claims are pre-empted by statute, Plaintiff cannot proceed under the common law.  As such, Defendant is entitled to summary judgment on the wrongful discharge claim.

B.  Negligence Claims

In Count II of the Complaint, Plaintiff asserts claims for negligent hiring, training, supervision, and retention.  Like the wrongful discharge claim, these claims arise out of Defendant's alleged failure to prevent or appropriately respond to Plaintiff's sexual harassment complaints.  For the reasons Plaintiff cannot proceed with her wrongful discharge claim, Plaintiff's negligence claims must also fall.  *See Hart*, 46 F. Supp. 2d at 444 (dismissing negligent supervision claim based on sexual harassment as preempted by the employment discrimination statutes); *Crosten v. Kamauf*, 932 F. Supp. 676 (D. Md. 1996) (dismissing claims for negligent failure to train or supervise as duplicative of Title VII claim for hostile work environment sexual harassment).  The employment discrimination statutes provide the exclusive remedy for an employer's failure to prevent sexual harassment in the workplace.

Furthermore, Plaintiff has not provided sufficient evidence of negligence on the part of Defendant.  In a negligence claim, the burden is on the plaintiff, "in the first instance, to adduce evidence of a duty that was breached and proximately caused the injuries sustained."  *Rhaney v. Univ. of Md. Eastern Shore*, 880 A.2d 357, 364 (Md. 2005).  Plaintiff has not met her burden.  Toe has not produced any evidence to suggest that UPS knew or should have known that these employees were likely to engage in the alleged discriminatory conduct.  Toe has also failed to show how UPS breached its duty to her in the training, supervision, and retention of these employees.  *See*

Toe Dep. 180:3-181:16; 252:10-253:22.  As such, Defendant is entitled to summary judgment on the negligence claims.

C.  *Respondeat Superior* Theory of Liability

Plaintiff's "*respondeat superior*" claim seems to be an articulation of the theory under which Defendant is liable for the alleged wrongful conduct of its employees.  The Court agrees with Defendant that the employment discrimination statutes also govern when an employer can be held vicariously liable for its employees' conduct.  *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998).  Therefore, the Court must also grant Defendant's motion for summary judgment with respect to the *respondeat superior* claim.

Plaintiff has certainly painted a vivid picture of a demeaning, harsh, and difficult work environment.  However, Plaintiff's allegations and the proof produced by Plaintiff is not sufficient to survive a motion for summary judgment.[4]  In *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986), the United States Supreme Court explained the non-moving party's burden in responding to a motion for summary judgment as follows:

> [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

*Matsushita*, 475 U.S. at 586-87 (emphasis in original) (internal quotations omitted).  Here, the law simply does not allow Plaintiff to circumvent the statutory mechanisms that are in place to provide redress for sexual harassment in the workplace.

But, even if the Court assumed the viability of these common law claims, Plaintiff's cause

---

[4] The Court agrees with Defendant that Plaintiff has failed to produce sufficient evidence that Defendant intended to force Plaintiff to quit, or that Plaintiff's working conditions were so objectively intolerable as to compel her to resign.

of action will still fail.  After reviewing the entire record in the light most favorable to Plaintiff, the Court believes Plaintiff has not produced sufficient evidence to lead a rational fact-finder to find in her favor.  As such, there is no genuine issue for trial.[5]

## CONCLUSION

For the reasons stated above, the Court will grant Defendant's Motion for Summary Judgment [23].  An Order consistent with this Opinion will follow.

Date:   December 20, 2006                                     /s/
                                                Alexander Williams, Jr.
                                                United States District Judge

---

[5] Because the Court has disposed of the motion on other grounds, the Court will not address Defendant's arguments that Plaintiff's claims are also barred by the exclusivity of the Maryland Worker's Compensation Act.

8